LEE S. RAPHAEL, ESQ. #180030
PROBER & RAPHAEL, A LAW CORPORATION
20750 Ventura Blvd., Suite 100
Woodland Hills, CA  91364
Telephone: (818) 227-0100
Facsimile: (818) 227-0637
Email: lraphael@pralc.com
D.087-274

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>PUBLIC SAFETY TECHNOLOGIES, INC., LICENSEE OF STATION WQJM334,<br><br>      Defendant. | No.<br><br>**COMPLAINT** |

Comes now Plaintiff, United States of America and states as follows:

1. This action is brought by the United States of America against Defendant Public Safety Technologies, Inc. ("PST" or "Defendant") pursuant to 47 U.S.C. § 504(a) to enforce and collect a Forfeiture Order released by the Federal Communications Commission ("FCC") on October 11, 2017, pursuant to 47 U.S.C. § 503(b).

## JURISDICTION AND VENUE

2. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 47 U.S.C. § 504(a).

3. Venue is proper pursuant to 28 U.S.C. §§ 1355(b), 1391(b), 1395(a) and 47 U.S.C. § 504(a) because the acts or omissions giving rise to this forfeiture action occurred within this District.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant is a corporation organized under the laws of the State of California and is a resident of the State of California.

## STATUTORY AND REGULATORY BACKGROUND

6. The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign wire and radio communications pursuant to the Communications Act of 1934, as amended (the Act), 47 U.S.C. §§ 151 *et seq*.

7. Under Section 301 of the Communications Act, persons operating or using radio transmitters must be licensed or authorized by the FCC, subject to certain exceptions.  47 U.S.C. § 301.

8. Private land mobile radio (PLMR) systems are used by companies, local governments, and other organizations to meet a wide range of communication

requirements, including coordination of people and materials, important safety and security needs and quick response in times of emergency.

9. Frequencies assigned to PLMR stations are available on a shared basis unless otherwise specified. 47 C.F.R. § 90.173(a).

10. Section 90.403(c) of the FCC's Rules provide that "[e]xcept for stations that have been granted exclusive channels under this part . . ., each licensee must restrict all transmissions to the minimum practical transmission time . . . ." 47 C.F.R. § 90.403(c).

11. Section 90.403(e) of the FCC's Rules provides that "[l]icensees shall take reasonable precautions to avoid causing harmful interference. This includes monitoring the transmitting frequency for communications in progress and such other measures as may be necessary to minimize the potential for causing interference." 47 C.F.R. § 90.403(e). For PLMR stations, harmful interference is defined as "any emission, radiation, or induction which specifically degrades, obstructs, or interrupts the service provided by such stations." 47 C.F.R. § 90.7.

12. Section 90.425(a) of the FCC's Rules states that each land mobile station authorized under Part 90 of the Rules "shall be identified by the transmission of the assigned call sign during each transmission or exchange of transmissions, or once each 15 minutes (30 minutes in the Public Safety Pool) during periods of continuous operation." 47 C.F.R. § 90.425(a). Section 425(a)

further states that the call sign must be "transmitted by voice in the English language or by International Morse Code." *Id.*

13. Pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), any person whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code or any rule, regulation or order issued by the FCC shall be liable to the United States for a forfeiture penalty.

14. Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under section 503(b) provides that: "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act." 47 U.S.C. § 312(f)(1). Section 312(f)(2) of the Act, which also applies to violations for which forfeitures are assessed under section 503(b) provides that: "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

15. As relevant here, no forfeiture penalty shall be imposed against a person by the FCC unless and until:

> (A) the Commission issues a notice of apparently liability, in writing, with respect to such person;
> (B) such notice has been received by such person, or until the Commission has sent such notice to the last known address of such person, by registered or certified mail; and (C) such person is granted an opportunity to show, in writing . . . why no such forfeiture penalty should be imposed.

47 U.S.C. § 503(b)(4).

16. Section 1.80 of the FCC's Rules provides the amounts of forfeiture penalties which the FCC may impose for violations. 47 C.F.R. § 1.80. The FCC has also issued its *Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture* Guidelines, 12 FCC Rec. 17087 (1997), *recon. denied*, 15 FCC Rec. 303 (1999). Section 1.80(b) sets a base forfeiture of $7,000 for interference for each violation or each day of a continuing violation. For the failure to transmit a call sign, Section 1.80(b) sets a base forfeiture amount of $1,000 for each violation or each day of a continuing violation. The FCC has established a base forfeiture amount of $4,000 for "unauthorized emissions," a category that the FCC has applied to violations of temporal operating restrictions, such as operating an AM broadcast station at times other than those specified on its license. *See JHT Ventures, Inc., Licensee of Station KULF, Bellville, Texas,* Notice of Apparent Liability for Forfeiture, 27 FCC Rcd 2072, 2073, paras. 4-5 (EB 2012).

17. Pursuant to section 503(b)(2)(E) of the Act, 47 U.S.C. § 503(b)(2)(E) in determining the amount of a forfeiture penalty, the FCC "shall take into account

the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." That same section empowers the Commission to assess a forfeiture of up to $100,000 for each willful or repeated violation of the Act or of any rule, regulation, or order issued by the Commission under the Act. *Id.* § 503(b)(2)(B). That amount is adjusted upward for inflation in Section 1.80 of the FCC's rules, 47 C.F.R. § 1.80(b)(2), and was for the period relevant to this suit $160,000.

18. The FCC's forfeiture penalties are "payable into the Treasury of the United States" and are "recoverable . . . in a civil suit in the name of the United States[.]" 47 U.S.C. § 504(a).

**THE VIOLATIONS AND NOTICE OF APPARENT LIABILITY**

19. Defendant is a licensee of PLMR WQJM334, West Covina, California ("Station"). The Station is authorized to operate on five frequencies from a fixed location on San Jose Hill in West Covina, California, including 451.350 MHz and 451.600 MHz. In the Station's license, these frequencies are assigned station class code FB7, which designates operation as a private carrier (Non-Profit), a general station class that does not itself convey any exclusive rights. Thus, Defendant was required to share the Station's frequencies with other co-channel licenses.

20. The FCC received an interference complaint from Mobile Relay Associates (MRA), a co-channel licensee, against PST. On August 25, 2015, an

Enforcement Bureau Agent from the FCC's Los Angeles Field Office investigated the complaint and observed PST operating on 451.600 MHz.  The agent determined that PST was transmitting continuously for long periods of time and was not transmitting its call sign as required.  The agent gave PST a verbal warning about these violations and the licensee's representative committed to correct the violations.

21.  On September 3, 2015, the FCC received another complaint from MRA.  MRA stated that PST had ceased operating the Station on 451.600 MHz, but shifted its operations to 451.350 MHz and was causing interference on that frequency.  An Enforcement Bureau Agent investigated this complaint and observed on three occasions—September 24, 2015, September 25, 2015 and December 7, 2015—that PST operated on 451.350 MHz in the same impermissible manner (i.e., continuously for long periods of time and without transmitting the Station's call sign) as it had on 451.600 MHz.

22.  On December 7, 2015, MRA reported to the Los Angeles Office that the interference caused by PST to MRA was so severe that MRA was forced to move its operations to a different frequency.  On December 9, 2015, with MRA's cooperation, the field agent monitored MRA's transmissions on 451.350 MHz from MRA's facilities and found that PST's continuous operation on 451.350 MHz was almost completely blocking MRA's ability to use the shared frequency.

23. On March 22, 2016, the Enforcement Bureau Agent from the Los Angeles Office contacted PST's representative to discuss the interference that PST continued to cause to co-channel licensees on 451.350 MHz. The next day, PST's representative claimed to the Agent that PST had ceased operating on 451.350 MHz and that PST would be implementing a new radio system on different frequencies.

24. On April 7, 2016, the Los Angeles Office issued a Notice of Violation (NOV) to PST for violating the FCC's Rules. In the NOV, the Los Angeles Office found that PST was (a) operating continuously on the shared frequency 451.350 MHz and therefore was failing to restrict its transmissions to the minimal practical transmission time; (b) not taking any other reasonable precautions to avoid causing harmful interference; and (c) not transmitting its call sign as required by the Rules, 47 C.F.R. §§ 90.403, (c), (e) and 90.425(a).

25. On April 22, 2016, PST responded to the NOV, stating that it had misunderstood the meaning of the Station's FB7 license class. PST further stated that the users of the Station had obtained a new license in the public safety pool and expected to transition to the new facilities within 45 days.

26. On July 6, 2016, an Enforcement Bureau Agent from the Los Angeles Office monitored the frequencies authorized under the Station's license in an area near the Station's fixed transmitter site. The Agent observed that although PST was no longer transmitting on 451.350 MHz, it had resumed continuous operations on

8
Complaint

451.600 MHz and did not transmit the Station's call sign as required under Section 90.425(a) of the Rules.

27.　On or about September 22, 2016, the FCC issued a Notice of Apparent Liability for Forfeiture (the "NAL") to Defendant for a monetary forfeiture of $25,0000, as a result of willful and repeated violations of Sections 90.403(c), 90.403(e) and 90.425(a) of the FCC's rules by operating continuously on a frequency to which PST was not granted exclusive use (and thereby not sharing the frequency), by failing to take reasonable precautions to avoid harmful interference to co-channel licensees operating on shared spectrum and by failing to transmit the Station's call sign at regular intervals.  The NAL ordered Defendant to pay the full amount of the proposed forfeiture or to file a written statement seeking reduction or cancellation of the proposed forfeiture, within 30 days of the date of the NAL.  A copy of the NAL is attached as **Exhibit "A."**

## THE FORFEITURE ORDER

28.　On or about October 24, 2016, Defendant responded to the NAL. Defendant explained that it acted as a subcontractor to build out a radio network and acquired the license for the Station as an accommodation for Motorola Solutions, Inc., the prime contractor (Motorola).  Defendant stated that Motorola stripped PST of its access to the Station's transmitter, thereby preventing PST from taking any corrective action.  Defendant specifically stated that it relied on advice from Motorola that the "FB7 classification was appropriate for the type of use"

"merely followed the lead" of Motorola, "was never allowed to carry out deployment matters on its own" and relied on Motorola's assertion that the Station was properly configured and coordinated to avoid interference to other licensees. Defendant also contended that it "did not have any knowledge that the call signs were not being properly transmitted." A copy of the Response is attached as **Exhibit "B."**

29. On or about October 11, 2017, the FCC issued a Forfeiture Order in the amount of $25,000 against Defendant for willfully and repeatedly violating Sections 90.403(c), 90.403(e) and 90.425(a). It found the arguments in Defendant's response to the NAL unpersuasive. Defendant did not contest any of the factual or legal discussions in the NAL that supported the findings that PST violated the FCC's Part 90 rules. PST's arguments that it was acting on behalf of Motorola were also unpersuasive because PST did not claim that there was any attempt to convey the Station license to Motorola. As such, PST, as licensee, was charged with full knowledge of and compliance with FCC rules. A copy of the Forfeiture Order is attached as **Exhibit "C."**

## CLAIM FOR RELIEF

30. Plaintiff adopts and incorporates each allegation set forth in Paragraphs 1 through 22 above.

31. Defendant willfully and repeatedly operated continuously on a frequency to which it was not granted exclusive use, failed to take reasonable

precautions to avoid causing harmful interference to co-channel licensees operating on a shared spectrum, and failed to transmit the Station's call sign at regular intervals in violation of Sections 90.403(c), 90.403(e), and 90.425 of the FCC's Rules.

32. By reason of the foregoing, Defendant is liable to the United States for the forfeiture amount of $25,000.00 pursuant to 47 U.S.C. § 503(b), section 1.80 of the FCC's Rules, 47 C.F.R. § 1.80 and the FCC's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines, 12 FCC Rcd 17087 (1997), recon. denied, 15 FCC Rcd 303 (1999). The Certificate of Forfeiture is attached hereto as **Exhibit "D."**

33. Demand has been made upon Defendant by Plaintiff for the sum due, but the amount due remains unpaid.

WHEREFORE, Plaintiff prays for judgment against Defendant for the total of $25,000, plus costs. Plaintiff further demands pursuant to 28 U.S.C § 1961, that interest on the judgment be at the legal rate until paid in full.

Dated: September 22, 2020          PROBER & RAPHAEL, ALC


                                   By: ____/s/_____
                                       Lee S. Raphael
                                       Attorneys for Plaintiff